# FOR PUBLICATION



FILED
Oct 29 2012, 8:28 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ROBERT R. FAULKNER**
Evansville, Indiana

ATTORNEY FOR APPELLEE:

**THOMAS P. NORTON**
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

BETTY J. ANGEL,                              )
                                             )
    Appellant-Plaintiff,                  )
                                             )
        vs.                        )    No. 82A04-1205-PL-292
                                             )
KENT H. POWELSON and                         )
MARJORIE A. POWELSON,                        )
                                             )
    Appellee-Defendant.                   )

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Robert J. Tornatta, Judge
Cause No. 82D03-1006-PL-3173

**October 29, 2012**

**OPINION – FOR PUBLICATION**

**PYLE, Judge**

## STATEMENT OF THE CASE

This case involves a dispute between neighbors—Betty J. Angel ("Angel") and Kent H. Powelson ("Kent") and Marjorie A. Powelson ("Marjorie") (collectively, "the Powelsons")—regarding two pieces of property in Vanderburgh County: (1) an 80-acre parcel of land, which was owned by Kent's grandmother, divided in 1964, and conveyed to the parties at different periods in time; and (2) a 20-foot wide strip of land that passes over a 60-acre tract of land ("the Roadway") that serves as a roadway to access the divided parcels. Angel received a deed to 73 acres "more or less" of the 80-acre parcel and an easement to use the Roadway in 1964, and Kent received a deed to 7 acres "more or less" of the 80-acre parcel and an easement to use the Roadway in 1978.

The parties used the Roadway and appear to have lived without major problems on their respective parcels until Kent gave a cell phone company a public utility easement, allowing it permission to come onto and put a cell phone tower on Kent's parcel. Forty-six years after Angel received the deed to her parcel, Angel sued Kent, claiming that the legal description of the property boundaries in her 1964 deed should be changed or reformed because Kent's grandmother misinformed Angel that she was receiving 73 acres and claiming that she had established ownership to the Roadway through adverse possession.

After the parties filed cross-motions for summary judgment, the trial court denied Angel's partial motion for summary judgment and granted part of the Powelsons' motion for summary judgment on Angel's claims of reformation of a deed and adverse

2

possession. Angel now appeals the trial court's order granting part of the Powelsons'

summary judgment motion.[1]

We affirm.

## ISSUE

Whether the trial court erred by granting part of the Powelsons' motion for
summary judgment on Angel's claims of reformation of a deed and adverse
possession.

## FACTS[2]

Nora Powelson ("Nora"), Kent's grandmother who died in 1980, owned the

property at issue. On April 29, 1964, Nora executed a warranty deed ("1964 Warranty

Deed"), in which she conveyed and warranted a portion of the eighty-acre parcel to

Angel and her husband Samuel Angel. Specifically, the 1964 Warranty Deed provided:

THIS INDENTURE WITNESSTH THAT NORA C. POWELSON, widow
and unmarried, Grantor of Los Angeles County and State of California,
CONVEYS AND WARRANTS to SAMUEL M. ANGEL and BETTY
JUNE ANGEL husband and wife, Grantees of Vanderburgh County and
State of Indiana, for the sum of One Dollar ($1.00) and other good and
valuable considerations, the following described real estate in Vanderburgh
County in the State of Indiana, to-wit:

Part of the East half of the Northwest Quarter of Section Twenty-
three (23), Township Five (5) South, Range Eleven (11) West,
described as follows, to wit:

Commencing at the Northwest corner of said half quarter section,
thence East along the North line thereof a distance of Seven Hundred
Ninety-eight (798) feet to a point, which point is also on the center

---

[1] Angel does not appeal the trial court's denial of her motion for partial summary judgment.

[2] We direct the parties' attention to Appellate Rule 46, which provides that the parties' Statement of Facts
"shall be in narrative form." Ind. App. R. 46(A)(6)(c); 46(B). We also direct the Powelsons' counsel's
attention to the requirement that the Statement of Facts be supported by citation to "page references to the
Record on Appeal or Appendix." Ind. App. R. 46(A)(6)(a); 46(B). Finally, we direct the Powelsons'
counsel's attention to the requirement that an appellate brief contain a Summary of Argument section.
*See* Ind. App. R. 46(A)(7), 46(B).

line of an existing twenty (20) foot roadway, thence South and parallel with the West line of said half quarter section of a distance of seventy-five (75) feet to a point, thence East and parallel with the North line of said half quarter section a distance of eighty-six (86) feet to a point, thence South and parallel with the West line of said half quarter section a distance of seven hundred fifty (750) feet to a point, thence East and parallel with the North line of said half quarter section a distance of four hundred thirty-six (436) feet, *more or less*, to a point on the East line of said half quarter section, which point is eight hundred twenty-five (825) feet South of the North line thereof; thence South along the East line of said half quarter section a distance of one thousand, eight hundred and fifteen (1,815) feet, *more or less*, to the Southeast corner of said half quarter section, thence West along the South line of said half quarter section a distance of one thousand, three hundred and twenty (1,320) feet, *more or less*, to the Southwest corner thereof, thence North along the West line of said half quarter section a distance of two thousand, six hundred and forty (2,640) feet, *more or less*, to the place beginning and containing seventy-three (73) acres, *more or less*.

ALSO:  An easement for roadway purposes across the following described real estate, to-wit:

A strip of land twenty (20) feet in width through and over a tract of sixty (60) acres off the South side of the East half of the Southwest quarter of Section Fourteen (14), Township Five (5) South, Range Eleven (11) West, the center line of which strip of land is as follows:

Commencing on the South line of the East half of the Southwest quarter of said Section Fourteen (14), seven hundred ninety-eight (798) feet East of the Southwest corner thereof; thence North 31 degrees 5 minutes West 134.1 feet; thence North 26 degrees 53 minutes West 109.4 feet; thence North 23 degrees 39 minutes West 82.7 feet; thence North 21 degrees 41 minutes West 134 feet; thence North 23 degrees 50 minutes West 135.8 feet; thence North 11 degrees West 36.1 feet to the center of the road known as the Orchard Road.

By accepting this Deed the Grantees agree that they will maintain the said roadway until another dwelling house is erected on any part of the said East half of the Northwest quarter of Section Twenty-three (23), Township Five (5) South, Range Eleven (11) West, at which time the Grantees agree to share the maintenance of said roadway with the owners of such other tract containing a dwelling house, or such other tracts containing dwelling houses, which may hereafter be sold off from the said half quarter section,

4

or which may be constructed on any sub-divided part of said half quarter section. It being the intention of the Grantor and Grantees that the costs of the maintenance of said roadway shall initially be borne by the Grantees, and shall ultimately be borne by all successors of the Grantees and the Grantor whose places of residence or places or dwelling shall be served by the said roadway.

Grantor reserves to herself, her successors and assigns, an undivided one-half (1 / 2) interest in the oil, gas and mineral rights in the above described real estate.

(App. 22-23) (emphasis added).[3] Thus, Nora conveyed seventy-three acres "more or less" to Angel ("Angel's Parcel") as well as an easement to use the Roadway. (App. 22). This 1964 Warranty Deed was recorded on August 17, 1964.

On April 13, 1974, Nora executed a warranty deed ("1974 Warranty Deed"), in which she conveyed and warranted the remainder of the eighty-acre parcel to Kent's parents, Charles W. Powelson and Magdelena E. Powelson ("Kent's parents"). Specifically, the 1974 Warranty Deed provided that Kent's parents were receiving "Seven (7) acres, more or less." (App. 156).[4] Nora also conveyed to Kent's parents an easement to use the Roadway "for roadway purposes[.]" (App. 156). The 1974 Warranty Deed was recorded on April 18, 1974.

On December 14, 1978, Kent's parents executed a warranty deed ("1978 Warranty Deed"), in which they conveyed the same "7 acres, more or less" to Kent (Kent's Parcel") as well as an easement to use the Roadway "for roadway purposes[.]" (App.

---

[3] Both Angel and the Powelsons have filed an appellate appendix. We will refer to Angel's Appendix as (App.) and to the Powelsons' Appendix as (Appellees' App.).

[4] The 1974 Warranty Deed conveyed the remaining portion of the eighty-acre parcel by specifically reciting the boundary description of Angel's Parcel as contained in her 1964 Warranty Deed and then specifically excluding Angel's Parcel of seventy-three acres "more or less" from the conveyance. (App. 156).

158).[5]  The 1978 Warranty Deed was recorded on December 15, 1978.  In 1998, Kent executed a warranty deed, in which he conveyed his parcel to himself and his wife as tenants by the entireties.

In the 1980s, Angel bought additional parcels of land, which were situated to the north of her parcel and to the east and west of the Roadway ("Northeast Parcel" and "Northwest Parcel").  At some point prior to 2006, Angel sold a portion of Angel's Parcel at issue to a third party.

In December 2008, the Powelsons granted a public utility easement to Powertel/Memphis, Inc. d/b/a T-Mobile USA, Inc. ("T-Mobile") for the placement of a cell phone tower on their property.  While the details are unclear, due to the fact that this case is before us on a partial entry of summary judgment, it appears that this easement for the cell phone tower and the parties' use of the Roadway became a bone of contention between the neighbors and ultimately led to this lawsuit between them.

In June 2010, Angel filed a complaint against the Powelsons.  In Count I, Angel sought reformation of the 1964 Warranty Deed, alleging that the deed should be reformed because Angel had just discovered in 2009 that: (1) the property boundaries contained in the 1964 Warranty Deed actually describe 71.6 acres instead of 73 acres; and (2) one of the property boundaries described in the 1964 Warranty Deed would have bisected a "dwelling house" that no longer existed but that Angel used to have on Angel's Parcel in 1964.  (App. 16).  In Count II, she sought a declaratory judgment that she had title to the

---

[5] The 1978 Warranty Deed contained the same specific reference to the property boundary description of Angel's Parcel as contained in her 1964 Warranty Deed and then specifically excluded Angel's Parcel of seventy-three acres "more or less" from the conveyance.  (App. 158).

Roadway by adverse possession. She also alleged that she had established a prescriptive easement to the Roadway in relation to her Northwest Parcel and Northeast Parcel due to her use of the Roadway to access those two parcels. In Count III, she alleged slander of title, arguing that Kent had "placed a cloud on the title to [her] real estate" by recording a warranty deed and a quit claim deed, in February 2009 and May 2010 respectively, to an eighty-acre tract of land that included her property, and she sought to quiet title and recover damages. (App. 19). Finally, in Count IV, she raised a claim of trespass and alleged the Powelsons' grant of a public utility easement to T-Mobile allowed the cell phone company to place utility lines that encroached and trespassed on her property.

The Powelsons filed an answer, asserting various affirmative defenses including laches. They also filed a counterclaim, alleging claims, among others, of trespass as well as encroachment and violation of the Roadway easement.

In April 2011, Angel filed a motion for partial summary judgment, arguing that she was entitled to summary judgment on her claim of slander of title as contained in Count III of her complaint. Thereafter, the Powelsons filed a response to Angel's motion and a cross-motion for summary judgment on Count III. The Powelsons argued, in part, that Angel had failed to show that there was a cloud of title on Angel's Parcel because she had conveyed a portion of that parcel to third parties. Angel then filed a reply, acknowledging that she had conveyed part of Angel's Parcel but arguing, in part, that the Powelsons' designation of evidence failed to comply with Trial Rule 56's specificity requirement and that the Powelsons' answer, affirmative defenses, and counterclaim were not properly designated evidence because they were not verified.

In August 2011, the Powelsons filed a motion for summary judgment, alleging they were entitled to summary judgment on all four claims raised by Angel in her complaint.[6] In relevant part, the Powelsons argued that they were entitled to summary judgment on Angel's claim for reformation of the deed because there was no fraud in the deed. They also argued that the reformation claim was otherwise barred by the doctrine of laches. Specifically, the Powelsons assert that Angel would have been aware of the total amount of actual acreage conveyed to her in the 1964 Warranty Deed long before 2009 because she had (1) conveyed a large portion of Angel's Parcel to third parties, and (2) acquired the Northeast Parcel and Northwest Parcel that were contiguous to Angel's Parcel. The Powelsons also argued that they were entitled to summary judgment on Angel's adverse possession claim because Angel could not satisfy all the elements of such a claim, such as exclusive use and control of the Roadway.

Thereafter, Angel filed a response in opposition to the Powelsons' summary judgment motion. She again argued, in part, that the Powelsons' designated evidence was not specific enough and that their unverified answer, affirmative defenses, and counterclaim were improper designated evidence for summary judgment. As part of her response, she designated a letter —which was handwritten by Kent's father[7] to Kent's grandmother Nora in June 1964—that Angel contended showed that there was a genuine issue of fact regarding whether Kent's grandmother had committed fraud when

---

[6] The Powelsons did not move for summary judgment on their claims contained in their counterclaim against Angel.

[7] Kent's father died in 1993.

representing the boundary lines of Angel's parcel, thereby requiring reformation of the 1964 Warranty Deed.[8]

The trial court held a hearing on the motions in November 2011.[9] Upon a request from the trial court, the Powelsons filed a supplemental brief with additional legal

---

[8] This 1964 letter from Kent's father to Kent's grandmother provided, in part:

> Dear Mom,
>
> I hope this finds you feeling OK and that your possibilities of being able to wind up your stay there are better.
>
> \* \* \* \* \*
>
> I saw Mr. Angel last night. He and friends were picknicking [sic] on the bottom last night. He has [a] garden in down there.
>
> We will wind up the deal this coming week I'm sure. His loan is cleared. He has taken some things out and put them in the barn. (Garage type house cleaning junk) . . .
>
> \* \* \* \* \*
>
> The apple trees and peach trees just south of South East corner of house are yours. The peach trees near the apple trees are all dead from Freeze.
>
> Actually from the description of land measurements of ground that is yours, the South east corner where the bathroom is, is on your ground. This is about how it looks
>
> [a hand drawn map of Kent's Parcel, with apple trees, barn, house locations, was included in letter but is omitted here]
>
> The best way to get a good picture in your mind is to come home and get a first hand look, what do you think – agree?
>
> There is a twin sycamore of fair size growing where our first out house stood. Mr. Angel said he would deed or lease back the spot where house now stands if we feel we want it for front yard or whatever. He needed house to get the loan.
>
> I believe I told you [that] you retain 50% of oil and mineral Rights on the entire 80 acres.
>
> You will have a nice location to put a home of any kind on. And if you wish to put a mobile home here, you may, as I've told you before.
>
> \* \* \* \* \*
>
> Lots of Love from us all --- Charles Jr.

(App. 340-41).

[9] The transcript from the summary judgment hearing is not included in the record on appeal because Angel did not request it in her notice of appeal.

authority in support of their summary judgment motion on Angel's claims of reformation of a deed and adverse possession (Count I and Count II of her complaint). Thereafter, Angel filed a reply to the Powelsons' supplemental brief, and the trial court allowed Angel to designate additional evidence.

On March 21, 2012, the trial court entered an order, denying Angel's partial motion for summary judgment and granting the Powelsons' motion for summary judgment on Angel's reformation of a deed and adverse possession claims. Specifically, on these two claims, the trial court's order provided:

### COUNT I OF PLAINTIFF'S COMPLAINT

Count I of plaintiff's complaint alleges she received only 71.6 acres of land instead of the 73 acres more or less contemplated by the parties. The original guarantor [sic], Nora C. Powelson, who died July 13, 1980, was the grandmother of the defendant, Kent H. Powelson. The Court agrees with the authorities cited by the defendant which hold that the general descriptive statement on the deed, "73 acres, more or less" must yield to the specific metes and bounds description. Additionally, as a practical matter, the transaction occurred 46 years before the filing of the complaint. The complaint was filed nearly 30 years after the guarantor [sic] passed away. The Court agrees with the defendants that Count I is barred by the Doctrine of Laches.

### COUNT II

The Court also agrees with the defendants that the plaintiff's complaint for adverse possession of the 20 foot roadway fails on the facts before the Court. The plaintiffs' [sic] use of the roadway was not exclusive and most importantly, was not hostile and visible since she was granted an easement to use the roadway for ingress and egress. However, the Court agrees with the plaintiff that her added use of the roadway for ingress and egress to the three adjoining parcels of real estate she purchased at least creates an issue of fact regarding the issue of establishing a prescriptive easement. The Court would note, however, that as the Court understands the facts, it will be difficult to prove Ms. Angel has more than a continued right to use the roadway consistent with her easement.

10

(App. 11-12).

Thereafter, on March 28, 2012, Angel filed a motion to amend the summary judgment order so that it reflected that the entry of summary judgment was a final order pursuant to Indiana Trial Rule 54(B). That same day, the trial court granted Angel's motion and entered an order specifying that "there [was] no just reason for delay" and "expressly direct[ing] entry of partial summary judgment" in favor of the Powelsons. (App. 14). On May 1, 2012, Angel filed a motion for extension of time to file her notice of appeal pursuant to Trial Rule 72(E), which the trial court granted on May 7, 2012. Angel now appeals the trial court's order granting part of the Powelsons' motion for summary judgment. Additional facts will be discussed as necessary.

DECISION

Angel argues that the trial court erred by granting part of the Powelsons' motion for summary judgment. Specifically, Angel argues that: (a) the trial court erred by considering the Powelsons' designated evidence; (b) the trial court erred by granting summary judgment to the Powelsons on Angel's claim for reformation of a deed; and (c) the trial court erred by granting summary judgment to the Powelsons on Angel's claim for adverse possession.

When reviewing a trial court's order granting summary judgment, we apply the same standard as that used in the trial court. *Kopczynski v. Barger*, 887 N.E.2d 928, 930 (Ind. 2008). Summary judgment is appropriate only where the designated evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). "A fact is 'material' if its

11

resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth . . . , or if the undisputed facts support conflicting reasonable inferences." *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (internal citations omitted). When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Dible v. City of Lafayette*, 713 N.E.2d 269, 272 (Ind. 1999).

Where a trial court enters conclusions of law in granting a motion for summary judgment, as the trial court did in this case, the entry of specific conclusions do not alter the nature of our review. *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind. 1996). We are not bound by the trial court's specific conclusions of law. *Id.* They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

A trial court's grant of summary judgment is "'clothed with a presumption of validity,'" and an appellant has the burden of demonstrating that the grant of summary judgment was erroneous. *Williams*, 914 N.E.2d at 762 (quoting *Rosi v. Bus. Furniture Corp.*, 615 N.E.2d 431, 434 (Ind. 1993)). In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the designated evidence. *SMDfund, Inc. v. Fort Wayne-Allen Cnty. Airport Authority*, 831 N.E.2d 725, 728 (Ind. 2005), *cert. denied*.

A. Designated Evidence

12

Angel first contends that the trial court erred by considering the Powelsons' designated evidence. Specifically, Angel bases her allegation of trial court error on her argument that the Powelsons failed to comply with Trial Rule 56 by failing to provide a specific reference to their designated evidence and by including unverified pleadings, such as their answer and counterclaim, in their designated evidence.

"Trial Rule 56(C) requires that '[a]t the time of filing the motion [for summary judgment] or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion.'" *Filip v Block*, 879 N.E.2d 1076, 1080 (Ind. 2008) (quoting Trial Rule 56(C)), *reh'g denied*. "Trial Rule 56(C) does not mandate either the form of designation, i.e., the degree of specificity required or its placement, i.e., the filing in which the designation is to be made." *Id.* at 1081. Nevertheless, a party should designate materials with "sufficient specificity to identify the relevant portions of a document[,]" and [t]he only requirement as to placement is that the designation clearly identify listed materials as designated evidence in support or opposition to the motion for summary judgment." *Id.* "'[A]s long as the trial court is apprised of the specific material upon which the parties rely in support of or in opposition to a motion for summary judgment, then the material may be considered.'" *Ling v. Stillwell*, 732 N.E.2d 1270, 1276 (Ind. Ct. App. 2000) (quoting *National Bd. of Exam'rs for Osteopathic Physicians and Surgeons, Inc. v. American Osteopathic Ass'n*, 645 N.E.2d 608, 615 (Ind. Ct. App. 1994)), *trans. denied.*

Angel contends that the trial court erred by considering the Powelsons' designated evidence. During the summary judgment proceedings, Angel did not file a formal motion to strike the Powelsons' designated evidence; instead, she challenged their designated evidence in her summary judgment response. However, on appeal, Angel fails to provide a citation to the record on appeal showing where the trial court entered an order denying her request to strike or disregard the designated evidence or otherwise making a ruling on Angel's objection to the designated evidence.[10] Because the record before us contains no order or ruling upon which Angel now bases her allegation of error, we conclude that Angel has waived review of her argument that the trial court erred by considering the Powelsons' designated evidence. *See Chustak v. N. Ind. Pub. Serv. Co.*, 259 Ind. 390, 394, 288 N.E.2d 149, 152 (1972) (explaining that, where no ruling on party's motion to produce appeared in the record, court on appeal could not assume trial court overruled party's motion and party waived review of alleged error); *see also Smith v. State*, 439 N.E.2d 634, 637 (Ind. 1982) ("Error alleged but not disclosed by the record is not a proper subject for appellate review.").

Waiver notwithstanding, because the Powelsons' designated evidence was specific enough to inform the trial court of the material upon which the Powelsons relied in support of their motion for summary judgment, it may be considered. *See Ling*, 732 N.E.2d at 1276; *see also Wells Fargo Ins., Inc. v. Land*, 932 N.E.2d 195, 201 (Ind. Ct. App. 2010) (considering a party's summary judgment evidence that was not formally

---

[10] Again, Angel did not request a copy of the transcript from the summary judgment hearing. Therefore, it is unknown if, during that hearing, the trial court made a specific ruling on Angel's objection or declined to strike or disregard the designated evidence.

14

designated but was included in material submitted by party in support of party's summary judgment motion because the trial court was "apprised of the specific material"). The Powelsons designated their evidence by means of a separate filing of designation in which they identified the evidence upon which they were relying in support of their summary judgment motion. While the items designated, such as multiple deeds, drawings, maps, and affidavits, were referred to in their entirety, we have explained that there are occasions on summary judgment when "including documents in their entirety may be necessary." *Id.* (holding that a party's designation of evidence, including affidavits in their entirety, was appropriate).[11]

B. Reformation of Deed

Angel contends that the trial court erred by granting summary judgment to the Powelsons on her claim of reformation of a deed. "Reformation is 'an extreme equitable remedy to relieve the parties of mutual mistake or fraud.'" *Meyer v. Marine Builders, Inc.*, 797 N.E.2d 760, 772 (Ind. Ct. App. 2003) (quoting *Estate of Reasor v. Putnam Cnty.*, 635 N.E.2d 153, 158 (Ind. 1994), *reh'g denied*). "The remedy of reformation is extreme because written instruments are presumed to reflect the intentions of the parties to the instruments." *Id.* Therefore, courts in Indiana may reform written instruments

---

[11] In regard to Angel's contention that the Powelsons' inclusion of their answer and counterclaim in their designated evidence was improper because those pleadings were unverified, we acknowledge that our Indiana Supreme Court has held that "[u]nsworn statements and unverified exhibits do not qualify as proper Rule 56 evidence." *Ind. Univ. Med. Ctr., Riley Hosp. for Children v. Logan*, 728 N.E.2d 855, 858 (Ind. 2000) (explaining that exhibits, consisting of uncertified documents and unsworn statements, attached to an affidavit were improper as designated evidence under Trial Rule 56(E)). However, we note that our Indiana Supreme has explained that when reviewing summary judgment "[w]e must consider the pleadings and evidence sanctioned by Ind. Trial Rule 56(C) without deciding its weight or credibility." *Malachowski v. Bank One, Indianapolis*, 590 N.E.2d 559, 562 (Ind. 1992) (citing *Webb v. Jarvis*, 575 N.E.2d 992, 994 (Ind. 1991), *reh'g denied*). *See also Ransburg v. Richards*, 770 N.E.2d 393, 395 (Ind. Ct. App. 2002), *trans. denied*. Nevertheless, even if we were not to consider these pleadings on our summary judgment review, we would still affirm the trial court's grant of summary judgment.

only if: (1) there has been a mutual mistake; or (2) one party makes a mistake accompanied by fraud or inequitable conduct by the other party. *Monroe Guar. Ins. Co. v. Langreck*, 816 N.E.2d 485, 490 (Ind. Ct. App. 2004). "Equity should not intervene 'where the complaining party failed to read the instrument, or, if he read it, failed to give heed to its plain terms.'" *Mid-States General & Mechanical Contracting Corp. v. Town of Goodland*, 811 N.E.2d 425, 435 (Ind. Ct. App. 2004) (quoting *Gierhart v. Consol. Rail Corp.-Conrail*, 656 N.E.2d 285, 287 (Ind. Ct. App. 1995)).

In Angel's complaint filed against the Powelsons, she included a claim for reformation of her 1964 Warranty Deed based on her contention that she made a mistake (as to the actual amount of acres on her parcel and the actual location of one of the boundary lines) accompanied by fraud on the part of Kent's grandmother, Nora, who died in 1980. Specifically, Angel contends that Nora represented to Angel that Nora was conveying 73 acres to Angel and that one of the boundary lines for the parcel would be east of Angel's "dwelling house" that existed in 1964.[12] Angel asserts that the actual property boundary lines contained in her 1964 Warranty Deed describe 71.6 acres and that one of the property boundary lines in that deed describes a boundary line that would have bisected the "dwelling house" that no longer exists on her parcel.

"A party seeking reformation on the grounds of fraud coupled with his unilateral mistake has the burden of proving the alleged fraud and his resultant mistake." *Ruff v. Charter Behavioral Health Sys. of Nw. Indiana, Inc.*, 699 N.E.2d 1171, 1173 (Ind. Ct. App. 1998), *reh'g denied*, *trans. denied*. To prove fraud, a plaintiff must establish the

---

[12] The house no longer existed on Angel's Parcel when she filed her complaint in 2010. The designated evidence only reveals that the dwelling house was on Angel's Parcel in 1964 "and for a number of years thereafter[.]" (App. 16).

following elements: (1) a material misrepresentation of past or existing fact which (2) was untrue, (3) was made with knowledge of or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) which proximately caused the injury or damage of which the plaintiff complains. *Lawyers Title Ins. Corp. v. Pokraka*, 595 N.E.2d 244, 249 (Ind. 1992), *reh'g denied*; *Ruff*, 699 N.E.2d at 1173.

Here, however, the trial court, in granting summary judgment to the Powelsons, concluded that Angel's claim for reformation of the 1964 Warranty Deed was barred by laches. Laches is an equitable defense that may be raised to stop a person from asserting a claim she would normally be entitled to assert. *Indiana Real Estate Comm'n v. Ackman,* 766 N.E.2d 1269, 1273 (Ind. Ct. App. 2002). "Laches is neglect for an unreasonable length of time, under circumstances permitting diligence, to do what in law should have been done." *Gabriel v. Gabriel*, 947 N.E.2d 1001, 1007 (Ind. Ct. App. 2011). "The general doctrine is well established and long recognized: 'Independently of any statute of limitation, courts of equity uniformly decline to assist a person who has slept upon his rights and shows no excuse for his laches in asserting them.'" *SMDfund*, 831 N.E.2d at 729 (quoting *Penn Mutual Life Ins. Co. v. Austin*, 168 U.S. 685, 698, 18 S. Ct. 223, 42 L. Ed. 626 (1898)).

The doctrine of laches may bar a plaintiff's claim if a defendant establishes the following three elements of laches: (1) inexcusable delay in asserting a known right; (2) an implied waiver arising from knowing acquiescence in existing conditions; and (3) a change in circumstances causing prejudice to the adverse party. *SMDfund*, 831 N.E.2d at

17

729. A mere lapse of time is not sufficient to establish laches; it is also necessary to show an unreasonable delay that causes prejudice or injury. *Id.* at 731. Prejudice may be created if a party, with knowledge of the relevant facts, permits the passing of time to work a change of circumstances by the other party. *Id.*

> In regard to applying laches to a claim involving real property, we have explained:
>
> No doctrine is so wholesome, when wisely administered, as that of laches. It prevents the resurrection of stale titles, and forbids the spying out from the records of ancient and abandoned rights. It requires of every owner that he take care of his property, and of every claimant that he make known his claims. It gives to the actual and longer possessor security, and induces and justifies him in all efforts to improve and make valuable the property he holds. It is a doctrine received with favor, because its proper application works out justice and equity, and often bars the holder of a mere technical right, which he has abandoned for years, from enforcing it when its enforcement will work large injury to many.

*Hutter v. Weiss*, 132 Ind. App. 244, 257, 177 N.E.2d 339, 346 (1961) (quoting *Ryason v. Dunten*, 164 Ind. 85, 98, 73 N.E. 74, 78 (1905)).

Angel contends that the trial court's grant of summary judgment based on laches was erroneous because the Powelsons failed to show that they were prejudiced by any delay in her bringing her claim for reformation of a deed and that they failed to show that she had knowledge of her right. Specifically, in regard to knowledge, Angel contends that she did not know until 2009 that she was conveyed less than 73 acres. She contends that her lack of knowledge was caused by fraud and that there is a question of fact as to whether she had the knowledge or the means of obtaining the knowledge that she was conveyed less than 73 acres. We disagree.

Here, the designated evidence reveals that Nora conveyed property to Angel and her husband in 1964. It is undisputed that Angel's 1964 Warranty Deed explicitly sets

18

forth that the total amount of acres conveyed was "seventy-three (73) acres, more or less." (App. 22). Thus, the total number of acres conveyed was on the face of the instrument Angel now seeks to reform. Angel, however, waited forty-six years after receiving her 1964 Warranty Deed to bring her claim for reformation of the deed.

We acknowledge that our Court has stated that knowledge of a right, for the purpose of laches, cannot be based merely on constructive knowledge. *See Fields v. Evans*, 484 N.E.2d 36, 39 (Ind. Ct. App. 1985). However, our Supreme Court has explained that a party, even if unaware, could be charged with knowledge for the purpose of laches based on the public nature of the information at issue. *See SMDfund*, 831 N.E.2d at 729 (holding that party, who waited seventeen years after an airport authority was enacted by statute, to raise a challenge that the airport authority was improperly constituted would be charged with knowledge of the airport authority and its activities "by virtue of their public nature"). *See also Simon v. Auburn, Bd. of Zoning Appeals*, 519 N.E.2d 205, 215 (Ind. Ct. App. 1988) (explaining that plaintiffs, who waited nearly seventeen years to challenge the validity of a zoning ordinance, could be charged with knowledge of and acquiescence of the ordinance and affirming judgment that laches barred attack on zoning ordinance); *Hutter*, 177 N.E.2d at 346 ("if the circumstances were such as to have put a person on inquiry, and the means of ascertaining the truth were readily available had inquiry been made, the neglect or failure to make such inquiry will charge the person with laches the same as though he had known the facts").

Here, Angel's 1964 Warranty Deed contained the property boundary lines of her parcel and specifically provided that the total number of acres contained in her parcel was

73 acres "more or less." (App. 22). The deed was recorded in 1964 and, thus, was a matter of public record. Given the facts and circumstances set forth in the designated evidence, Angel can be charged with knowledge of her right. *See Hutter*, 177 N.E.2d at 346. Further, her failure to give heed to the "more or less" language contained in her 1964 Warranty Deed will not defeat the application of laches. *See Mid-States*, 811 N.E.2d 435 (explaining that equity should not intervene where complaining party failed to read instrument, or, if he read it, failed to give heed to its plain terms).

Additionally, the designated evidence shows that the Powelsons were prejudiced by Angel's delay in asserting her right, which worked a change of circumstance for the Powelsons. Specifically, they were prejudiced by the death of witnesses, such as Kent's grandmother Nora and Kent's father, who could have provided "valuable testimony" regarding the conveyance of land in Angel's 1964 Warranty Deed, any alleged representation made regarding the same, and the circumstances surrounding the conveyance. *See Shafer v. Lambie*, 667 N.E.2d 226, 231 (Ind. Ct. App. 1996) (stating laches appeared to be viable defense where delay by plaintiff in asserting rights until after death of one of the parties deprived defendant of "valuable testimony" concerning relationship between the parties and the terms of alleged agreement). Because the designated evidence supports the trial court's conclusion that Angel's claim for reformation of a deed is barred by laches, we affirm the trial court's grant of summary judgment to the Powelsons on this claim.[13]

C. Adverse Possession

---

[13] Because we conclude that the trial court properly granted summary judgment to the Powelsons based on the doctrine of laches, we need not address Angel's other arguments regarding this claim.

Lastly, Angel contends that the trial court erred by granting summary judgment to the Powelsons on her claim of adverse possession of the Roadway.

The doctrine of adverse possession is one that "entitles a person without title to obtain ownership to a parcel of land upon clear and convincing proof of control, intent, notice, and duration."[14] *Fraley v. Minger*, 829 N.E.2d 476, 486 (Ind. 2005). The *Fraley* Court summarized these required elements as follows:

> (1) Control—The claimant must exercise a degree of use and control over the parcel that is normal and customary considering the characteristics of the land (reflecting the former elements of "actual," and in some ways "exclusive," possession);
>
> (2) Intent—The claimant must demonstrate intent to claim full ownership of the tract superior to the rights of all others, particularly the legal owner (reflecting the former elements of "claim of right," "exclusive," "hostile," and "adverse");
>
> (3) Notice—The claimant's actions with respect to the land must be sufficient to give actual or constructive notice to the legal owner of the claimant's intent and exclusive control (reflecting the former "visible," "open," "notorious," and in some ways the "hostile," elements); and
>
> (4) Duration—The claimant must satisfy each of these elements continuously for the required period of time (reflecting the former "continuous" element).

*Id.*[15] "The failure to establish any one element of an adverse possession claim defeats the claim." *Altevogt v. Brand*, 963 N.E.2d 1146, 1152 (Ind. Ct. App. 2012)

---

[14] In *Fraley*, our Supreme Court rephrased the traditional common law elements of adverse possession, which required a claimant prove the possession was (1) actual; (2) visible; (3) open and notorious; (4) exclusive; (5) under claim of ownership; (6) hostile; and (7) continuous for a statutory period of time. *Fraley,* 829 N.E.2d at 485.

[15] In addition to satisfying the elements set forth in Fraley, a claimant or adverse possessor must comply with Indiana Code § 32-21-7-1 regarding payment of taxes. *See Roberts v. Feitz*, 933 N.E.2d 466, 479 (Ind. Ct. App. 2010).

Here, we cannot say that the trial court erred by granting summary judgment to the Powelsons on Angel's claim of adverse possession to the Roadway. The undisputed designated evidence reveals that both Angel and the Powelsons were granted an easement to use the Roadway and that they both have used it for ingress and egress purposes. Thus, the elements of control and intent have been negated. *See Altevogt*, 963 N.E.2d at 1152-53 (holding that a plaintiff's acknowledgement that others had an easement and used the disputed property is inconsistent with a claim of adverse possession and negated elements of control and intent); *Nodine v. McNerney*, 833 N.E.2d 57, 66 (Ind. Ct. App. 2005) (explaining that adverse possession claimants' recognition of the rights of other lot owners to use the disputed areas showed that claimants were not exerting exclusive control thereof and did not intend to claim full ownership of those areas), *clarified on reh'g,* 835 N.E.2d 1041, *trans. denied*; *see also Rieddle v. Buckner*, 629 N.E.2d 860, 862 (Ind. Ct. App. 1994) (noting that possession of land claimed by adverse possession was not exclusive where the claimant occupies the land in common with a third party). Accordingly, the trial court did not err by granting summary judgment to the Powelsons on Angel's claim of adverse possession of the Roadway.

Affirmed.

FRIEDLANDER, J. and BROWN, J. concur.