Joni K. GABRIEL, Personal Representative of the Estate of Eugene A. Gabriel, Jr., Appellant–Respondent–Intervenor,

v.

Loretta GABRIEL, Personal Representative of the Estate of Eugene A. Gabriel, Sr., Appellee–Petitioner.

No. 34A04–1007–ES–438.

Court of Appeals of Indiana.

April 29, 2011.

Joseph H. Davis, Beth A. MacDonald, Davis & MacDonald Law Firm, Thomas J. Trauring, Button McGarvey Trauring Wilson & Oaks, Kokomo, IN, Attorneys for Appellant.

Scott T. McClelland, Kokomo, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

This case illustrates the importance of utilizing professionals, memorializing purported understandings between the parties, and properly "keeping the books" of a business. Unfortunately, we know all too well from our experience as judicial officers, that many individuals conduct their business affairs in the manner in which the parties have in this instance.

Appellant-respondent/intervenor Joni K. Gabriel (Joni), the personal representative of the Estate of Eugene A. Gabriel, Jr., (Tony) appeals the trial court's judgment in favor of appellee-petitioner Loretta Gabriel (Loretta), the personal representative of the Estate of Eugene A. Gabriel, Sr., (Gene). Specifically, Joni argues that the judgment cannot stand because the evidence demonstrated that: a) the doctrine of laches precluded Loretta from asserting a claim of stock ownership in Gabe's Pizza, a family corporation; b) the six-year statute of limitations barred Loretta's cause of action; and c) the trial court erroneously determined that she was required to prove a transfer of stock through a writing signed by Gene. Finally, Joni maintains that the trial court should have declared Loretta incompetent to testify as to matters that related to Tony's estate pursuant to the Dead Man's Statute.[1]

We conclude that the trial court properly determined that Loretta's action was not barred and that the evidence supported the findings and conclusions that Gene had not transferred the stock to Tony. However, we reverse the trial court's determination regarding the ownership of the stock and the percentage of the estate that is to be distributed to Loretta and the remaining heirs. On remand, the trial court is instructed to hear further evidence, if necessary, and to make additional findings as to the distribution of the estate.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions.

## FACTS[2]

Gabe's Pizza, Inc., (Gabe's Pizza) was incorporated on October 9, 1969, and operated as a pizzeria in Kokomo. Robert Donahue had loaned funds to Gene and his wife, Loretta, to start the business.

Gene, Loretta, and Walter Crumley were the original incorporators of the business and the only members of the Board of Directors. The Articles of Incorporation

---

1. Ind.Code § 34–45–2–4.

2. We heard oral argument on April 11, 2011, in Indianapolis. We commend counsel for their able presentations.

authorized Gabe's Pizza to issue 1000 shares of common stock. At the time of incorporation, 550 shares were issued to Gene and Loretta, and 450 shares were issued to Donahue and his family.

Sometime in 1970, Gene and Loretta purchased Donahue's stock, leaving them as the sole shareholders of the business. And in 1971, Gene owned and incorporated a second pizzeria, Mr. Gabe's, also in Kokomo. However, that business was later dissolved, and Gabe's Pizza assumed those assets.

On February 22, 1971, Gabe's Pizza filed a notice of change of principal office and/or resident agent form with the Indiana Secretary of State that listed Gene as the resident agent. Gabe's Pizza also filed business entity reports with the Secretary of State, designating Gene as President and Loretta as secretary and/or treasurer of the corporation. From 1969 through early 1998, Gene managed and operated Gabe's Pizza with Loretta's assistance. Gene and Loretta established two bank accounts for Gabe's Pizza at the Union Bank and Trust Company (Union Bank). Gene and Loretta were the only individuals who could withdraw funds and make deposits on the accounts.

In 1998, Gene became ill. As a result, the Gabriels' son, Tony, began to run the restaurant's day to day operations. Gene died on October 31, 1998. At that time, the assets of Gabe's Pizza consisted of the bank accounts, equipment, inventory, and the goodwill of the business.

Loretta believed that she owned the corporation when Gene died. She continued working at the pizzeria for a time, including managing the books and writing the necessary checks for the operations of the business. Tony began making deposits on behalf of Gabe's Pizza and Loretta signed the business's checks. At some point, Pam Nichols, an agent of Key Bank,[3] informed Tony that he needed to submit a signature card for authorization to those accounts. However, Tony never executed a signature card and he informed Nichols that he was "Eugene Gabriel." Approximately six months after Gene's death, Loretta no longer participated in the operation of Gabe's Pizza.

There is no writing demonstrating that Gene transferred the stock or assets of Gabe's Pizza to Tony or anyone else. As an officer of the corporation, Loretta never approved or was aware of any transfer of the corporate stock. Moreover, no corporate resolutions, minutes of meetings of the board of directors, shareholders, or other meetings were offered as evidence that would indicate that the board of directors and/or shareholders of Gabe's Pizza approved a sale of any shares in the company, or approved a change of officers or registered agent after the Business Entity Report was filed in 1997. The Business Entity Report for Gabe's Pizza that was filed with the Secretary of State on December 7, 1999, and similar reports that were filed in 2001, 2003, and 2005 and signed by Tony, showed Tony as president of the corporation.

From 1998 through 2007, Tony reported taxable income from Gabe's Pizza in the amount of $885,151. Tony continued to manage and operate the business during that time. Commencing with the fiscal year ending October 31, 1999, Gabe's Pizza distributed to Tony—as the sole shareholder—undistributed taxable income previously taxed in the total amount of $657,965. From 1998 until 2008, Paul Hillis, a certified public accountant, prepared the tax returns for Gabe's Pizza based upon the financial information that Tony

---

3. Key Bank is the successor in interest to Union Bank.

had supplied. Hillis could not recall when Tony informed him that Gabe's Pizza had been "transferred" to him. *Id.* Appellant's App. p. 30.

Tony continued living with Loretta until he married Joni in 2007. Tony became ill later that year and died in December 2007. On January 22, 2008, Joni filed a petition for appointment of personal representative in Tony's estate, wherein she alleged that Gabe's Pizza was an asset of Tony's estate.

On March 25, 2008, Loretta filed a "Petition to Determine Heirship" and named Tony as a person claiming an interest in Gene's estate. *Id.* at 38. Loretta requested that the trial court determine Gene's heirs, and alleged that Gabe's Pizza was an asset of Gene's estate.

On April 15, 2008, Joni filed a petition to intervene in Loretta's action, which the trial court subsequently granted. Joni filed an estate claim and later filed an answer and counterclaim to Loretta's petition. Joni alleged that Tony was in possession and in control of Gabe's Pizza and its assets from October 27, 1998, until his death on December 13, 2007. Joni also alleged that all statutes of limitations for actions against Tony growing out of his acquisition of 100% of the stock of Gabe's Pizza on October 27, 1998, had run during Tony's lifetime.

Joni maintained that Loretta should have known that Tony claimed 100% ownership of Gabe's Pizza no later than when Hillis signed her 1998 federal income tax return. That tax return did not attribute any of the income from Gabe's Pizza to Loretta. Thus, Joni asked the trial court to declare Tony the owner of Gabe's Pizza at the time of his death.

Joni also asserted in her counterclaim that Loretta was barred by laches from asserting that her tax returns were untrue,

incomplete, and incorrect because she did not report any income from Gabe's Pizza. The issues that Loretta raised and the contentions that Joni set forth in her affirmative defenses and counterclaim were tried to the court on April 8, 2010. Joni filed a request for special findings, and both parties submitted proposed findings of fact and conclusions of law.

Just before the April 8, 2010 hearing commenced, Joni filed an objection to the competency of witnesses under the Dead Man's Statute.[4] More specifically, Joni sought to preclude Loretta and her children from testifying about matters against Tony's estate. The trial court overruled the objection for the reasons set forth in an earlier order dated September 8, 2009, concluding that neither Loretta nor the children's interests were adverse to Tony's estate. The trial court also determined that their testimony was not precluded because this was not an action that involved the provisions of Indiana Code section 34-45-2-5, which applies to a cause of action "by or against heirs or devisees founded on a contract with or demand against an ancestor." Appellant's App. p. 89. Rather, the trial court observed that Loretta's petition sought a determination of the heirs and the proper division of the estate's assets.

After hearing the evidence, the trial court issued findings of fact and conclusions of law on June 28, 2010, determining that Gabe's Pizza was an asset of Gene's estate. The trial court observed that Gene was the sole shareholder for many years before his death, and there was no writing that Gene executed evidencing the transfer of his shares to Tony or anyone else.

The trial court noted that the evidence offered in support of a transfer by Gene to Tony were the corporate tax returns that

4. Ind.Code §§ 34-45-2-4 and -5.

Hillis prepared from 1998 through 2008. Hillis prepared the returns based on Tony's representation that a transfer of shares had occurred five days before Gene's death. However, because there was no proof that Gene had actually transferred any of the stock, the circumstances did not establish that Tony owned the business on the date of Gene's death. As the trial court concluded, "no living person authorized, witnessed or has personal knowledge of any discussions or negotiations with regard to a sale or transfer of the shares of Gabe's Pizza from Gene to any party in 1998." Appellant's App. p. 33. Also, because Joni alleged that the stock was transferred only five days before Gene died, the trial court determined from the evidence that was presented that Gene was most likely incompetent to execute a transfer of assets.

The trial court specifically rejected Joni's claims that Loretta's contentions were barred by the statute of limitations. More particularly, the trial court found that Loretta's cause of action did not involve an action for damages for detention of personal property or for recovery of possession of personal property for which the statute of limitations would apply.

The trial court also found that Gene's will was not probated within three years of his death. Therefore, it was determined that Gene's estate was to be treated the same as an estate of an individual who dies intestate pursuant to Indiana Code section 29-1-7-15.1. As a result, the trial court ordered that Loretta was to receive one-half of Gene's estate, and "one-tenth of it should be distributed to each issue of [Gene]." Appellant's App. p. 35.

Joni now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

At Joni's request, the trial court issued findings of fact and conclusions pursuant to Indiana Trial Rule 52. Typically, when reviewing a judgment based on such findings, we must first determine whether the evidence supports the findings and then determine whether the findings support the judgment. *Atterholt v. Robinson*, 872 N.E.2d 633, 638–39 (Ind.Ct.App.2007). We will set aside the trial court's findings of fact and judgment only if they are clearly erroneous. *Id.* at 639. Findings of fact are clearly erroneous when the record lacks any reasonable inference from the evidence to support them, and the judgment is clearly erroneous if it is unsupported by the findings and conclusions thereon. *Id.* In assessing whether findings are clearly erroneous, we will not reweigh the evidence nor judge the credibility of the witnesses. *Id.* Rather, we consider the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Id.* A finding or conclusion is clearly erroneous when our review of the evidence leaves us with the firm conviction that a mistake has been made. *Id.* While we defer to the trial court's findings of fact, we do not defer to its conclusions as to the applicable law. *Id.*

### II. Laches

██ Joni contends that the trial court should have concluded that the doctrine of laches barred Loretta from claiming ownership to Gabe's Pizza. Specifically, Joni argues that Loretta acquiesced in Tony's ownership of the stock for nearly ten years, and now "she wants to play the part of the shareholder to take back the corporation's stock and the $306,445 undistributable taxable income previously taxed to Tony." Appellant's Br. p. 45.

██ The doctrine of laches may be raised to prevent a person from asserting a claim that he or she would normally be

entitled to assert. *Indiana Real Estate Comm'n v. Ackman*, 766 N.E.2d 1269, 1273 (Ind.Ct.App.2002). Laches is neglect for an unreasonable length of time, under circumstances permitting diligence, to do what in law should have been done. *In re Paternity of P.W.J.*, 846 N.E.2d 752, 759 (Ind.Ct.App.2006). The rationale behind laches is that a person who, for an unreasonable length of time, has neglected to assert a claim against another waives the right to assert a claim when the delay prejudices the person against whom she would assert it. Laches requires evidence of (1) inexcusable delay in asserting a right; (2) an implied waiver arising from a knowing acquiescence in existing conditions; and (3) a change in circumstances causing prejudice to the adverse party. *Lowry v. Lowry*, 590 N.E.2d 612, 621 (Ind. Ct.App.1992).

Joni asserts that Loretta's wait of nearly ten years after Gene's death before seeking appointment as the personal representative of his estate and her failure to assert a claim to the stock amounted to an implied waiver that arose from a known acquiescence in Tony's ownership of the stock. Notwithstanding these contentions, the evidence demonstrates that Loretta continued to manage the books, write checks, and work at the business. Tr. p. 33–37. When Loretta learned that another individual might be claiming an interest in the corporation shortly after Tony's death, she promptly requested that the trial court determine ownership of Gabe's Pizza in the petition to determine heirship. Appellant's App. p. 38–39. Although the locks to the business were changed at some point, the trial court was free to reject Joni's proposition that Loretta should have known that someone else was asserting ownership in the business prior to that time. As a result, Joni has not demonstrated that Loretta knew of a legal right that she failed to exercise. More-

over, Joni has not established that she has sustained prejudice to the extent that she, in some way, altered her position in light of Loretta's alleged "delay" in requesting the trial court to administer Gene's estate. For all these reasons, we conclude that the trial court properly rejected Joni's claim that the action should have been barred under the doctrine of laches.

### III. Maintaining Cause of Action— Denial of Joni's Lawsuit

■ Joni also argues that the trial court's judgment cannot stand because the trial court ignored the assertions of her counterclaim, which alleged that Tony owned Gabe's Pizza at the time of his death.

In support of this contention, Joni directs us to Indiana Code section 29–1–13–3, which provides that

> Every personal representative shall have full power to maintain any suit in any court of competent jurisdiction, in his name as such personal representative, for any demand of whatever nature due the decedent or his estate or for the recovery of possession of any property of the estate or for trespass or waste committed on the estate of the decedent in his lifetime, or while in the possession of the personal representative. . . .

In light of this statute, Joni claims that she was authorized to initiate a counterclaim alleging ownership in Gabe's Pizza. Joni urges that the trial court, in summarily denying her counterclaim, abused its discretion in denying her the power to maintain affirmative defenses and her request for declaratory relief.

However, the record shows that on November 21, 2008, Joni filed a motion to consolidate the petitions to determine heirship. The trial court denied the motion and agreed with Loretta that:

"Assets of [Tony's estate] cannot be determined until a determination has been made on [Loretta's] Petition to Determine Heirship in her late husband's . . . estate as to the proper heirs to . . . the estate and the proper assets which should be included in his estate. Only after said determination is made can a finding be made as to what assets Tony owned at his death in December of 2007."

Appellee's App. p. 5. Moreover, Joni *did* litigate her affirmative defenses and counterclaims at the April 8, 2010, hearing. The trial court specifically denied those counterclaims. As a result, Joni has failed to show that the trial court ignored the merits of her counterclaim.

### IV. Statute of Limitations

■ Joni next claims that the judgment must be set aside because Loretta's action was barred by the six-year statute of limitations. Joni maintains that the statute of limitations applies because Loretta was seeking to recover personal property.

■■ We initially observe that the applicable statute of limitations is ascertained by identifying the nature and substance of the cause of action. The type of action is determined by inquiring into the nature of the alleged harm and not by the theories of recovery advanced in the complaint. *Whitehouse v. Quinn,* 477 N.E.2d 270, 274 (Ind.1985). The party pleading the statute of limitations bears the burden of proving to the finder of fact that the cause of action began beyond the statutory time allowed. *Estate of Ballard v. Ballard,* 434 N.E.2d 136, 142 (Ind.Ct.App. 1982). An action for the recovery of personal property must be commenced within six years after the cause of action accrues. Ind.Code § 34–11–2–7.

Joni asserts that the statute of limitations for Loretta's cause of action against Tony for recovering possession of the stock of Gabe's Pizza and its assets began to run "when Loretta knew, or in the exercise of ordinary diligence, could have discovered that she or Gene's estate had sustained an injury as the result of Tony's taking possession of Gabe's Pizza as its owner." Appellant's Br. p. 33. And Joni argues that Loretta knew, or should have known by March 2000 that "Tony had taken Gabe's Pizza." *Id.* at 34.

Joni points out that the 1999 personal income tax returns that Hillis delivered to Loretta showed that none of Gabe's Pizza's income had been taxed to her. Thus, because Loretta did not commence her action within six years, Joni maintains that Tony held title to 100% of the stock when he died on December 13, 2007.

■ In our view, the central issue here is the ownership of the stock at the time of Gene's death. In accordance with Indiana Code section 29–1–6–6(a), any interested person may petition the court to determine the heirs of the decedent and their respective interests in the estate during the administration of a decedent's estate. No time restrictions are placed on the interested party, and a petition to determine heirship is not a will contest and is not subject to the time limitations imposed on will contests. *Haskett v. Haskett,* 164 Ind. App. 105, 327 N.E.2d 612, 616 (1975). Finally, Loretta's action cannot be construed as one for the recovery of personal property because the ownership of the property in the estate had not yet been determined. Thus, the six-year statute of limitations did not bar Loretta's action.

### V. Competency to Testify

■ Joni next claims that the trial court erred in permitting Loretta to testify with regard to matters against Tony's estate. More particularly, Joni claims that

the trial court did not consider that Loretta's interests were adverse to Tony's estate.

Indiana Code section 34–45–2–4, provides that

(a) This section applies to suits or proceedings:

(1) in which an executor or administrator is a party;

(2) involving matters that occurred during the lifetime of the decedent; and

(3) where a judgment or allowance may be made or rendered for or against the estate represented by the executor or administrator.

(b) This section does not apply in a proceeding to contest the validity of a will or a proceeding to contest the validity of a trust.

(c) This section does not apply to a custodian or other qualified witness to the extent the witness seeks to introduce evidence that is otherwise admissible under Indiana Rule of Evidence 803(6).

(d) Except as provided in subsection (e), a person:

(1) who is a necessary party to the issue or record; and

(2) whose interest is adverse to the estate; is not a competent witness as to matters against the estate.

(e) In cases where:

(1) a deposition of the decedent was taken; or

(2) the decedent has previously testified as to the matter;

and the decedent's testimony or deposition can be used as evidence for the executor or administrator, the adverse party is a competent witness as to any matters embraced in the deposition or testimony.

The general purpose of the Dead Man's Statute is to protect a dece-dent's estate from spurious claims. *J.M. Corp. v. Roberson,* 749 N.E.2d 567, 571 (Ind.Ct.App.2001). The "Dead Man's Statutes guard against false testimony by a survivor by establishing a rule of mutuality, wherein the lips of the surviving party are closed by law when the lips of the other party are closed by death." *Id.* Generally, when an executor or administrator of an estate is one party, the adverse parties are not competent to testify about transactions that took place during the lifetime of the decedent. *Senff v. Estate of Levi,* 515 N.E.2d 556, 558 (Ind.Ct.App. 1987).

Before Indiana Code section 34–45–2–4 will apply, the party whose testimony is to be excluded must be one "whose interest is adverse to the estate." Here, Joni cannot legitimately claim that anyone who may testify at the hearing to determine heirship has an adverse interest to the estate because it has yet to be determined who has an interest. And an "interest," whether it be favorable or unfavorable to the estate, will be apparent after the court determines the appropriate heirs. As a result, the trial court properly permitted Loretta to testify at the hearing.

### VI. Transfer of Stock—Proof and Ownership

Joni next claims that the trial court erred in concluding that she had to prove the transfer of stock to Tony through a written document executed by Gene. In support of her contention, Joni directs us to Indiana Code section 23–1–26–7, which provides that

Unless the articles of incorporation or bylaws provide otherwise, the board of directors of a corporation may authorize the issue of some or all of the shares of any or all of its classes or series without certificates.

Joni points out that because this statute is silent as to what is required for a stock

transfer, she maintains that "if a written document is not necessary for the issuance of stock, and the code is silent as to written requirements as to the transfer of stock, then there is no reason to require a writing to transfer stock." Appellant's Br. p. 38. That said, Joni again points out that she introduced evidence that Tony managed, controlled, and received distributions of the profits from 1998 through 2007. As a result, Joni contends that the evidence established Gene's transfer of stock to Tony, even though there was no written documentation.

Notwithstanding these contentions, nothing in the trial court's findings suggest that Joni was "required" to prove that the stock was transferred by a writing. Appellee's Br. p. 20. Rather, the trial court determined that there was *no* evidence—written or otherwise—that Gene had transferred any of the stock during his lifetime. *Id.* at 33.

Indeed, the evidence supports the findings that Tony managed the day to day operations of Gabe's Pizza following Gene's death, but did not own the business. Loretta continued to work at Gabe's Pizza until six months after Gene's death and received weekly income from Gabe's Pizza. As an officer of the corporation, Loretta never approved or was aware of any transfer of the stock in Gabe's Pizza. As of the date of Gene's death in 1998, only Gene and Loretta were authorized to withdraw funds and make deposits on Gabe's Pizza's bank accounts. Although Tony informed Hillis, the accountant who prepared the tax documents for Gabe's Pizza, that the stock had been transferred to him, there was no written documentation showing that a transfer had been made. In other words, Hillis prepared the business's tax returns based solely on Tony's representa-

tions that a stock transfer was effected five days prior to Gene's death. Moreover, there is no evidence that anyone witnessed, authorized, or knew of any discussions or negotiations regarding a purported sale or transfer of the shares of Gabe's Pizza from Gene in 1998.

In light of the above, it is apparent that the trial court rejected Tony's self-serving statements regarding his purported ownership of the business. Indeed, it was reasonable for the trial court to conclude from the evidence that Tony managed Gabe's Pizza after Gene died, but that Gene remained the owner of the business until his death in October 1998.

### VII. Distribution of Stock and Assets

 Finally, we note that from this record, and the discussions at oral argument, the ultimate distribution of the stock in Gabe's Pizza between Loretta and Gene's heirs must be addressed. As discussed above, 550 shares of stock were issued to Gene and Loretta, and 450 shares were issued to the Donahues at the time of incorporation in 1969. Approximately one year later, Gene and Loretta purchased the Donahues' stock, leaving them as the sole shareholders of the corporation. We cannot discern from the record whether the corporation was the actual purchaser of the stock from the Donahues.

Moreover, although Gene and Loretta owned 550 shares of the Gabe's Pizza stock, it is not clear from the record whether Loretta and Gene owned the stock as joint tenants with the right of survivorship or as tenants in common at the time of Gene's death. If the stock was owned with rights of survivorship, Loretta would receive all of Gene's shares at his death.[5] However, if Gene and Loretta

---

**5.** Indiana Code section 6–4.1–2–5 provides that "If property is held by two (2) or more individuals jointly with rights of survivorship, the exercise of the rights of the surviving joint

owned the stock as tenants in common at the time of Gene's death, then it is conceivable that Loretta is entitled to 137.5 shares of the stock that Gene owned at the time of his death, in addition to the 275 shares that she held in her own name. Thus, depending on the nature of the stock's ownership, there may be but 137.5 shares of the stock remaining to be divided and distributed among Gene's children and Tony's estate in accordance with our laws of intestate succession.[6] Put another way, Loretta may be entitled to 75% of the Gabe's Pizza stock with the remaining 25% to be distributed to the heirs.

Therefore, we reverse the trial court's determination regarding the percentage of the distribution of Gene's estate among Loretta, the surviving children, and Tony's estate. On remand, the trial court may hear additional evidence and conduct additional fact finding to determine the appropriate distribution of Gene's estate.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions.[7]

KIRSCH, J., and BRADFORD, J., concur.

owner or owners to the immediate ownership or possession and enjoyment of the property upon the death of one (1) of the joint owners is a transfer to which the inheritance tax applies."

6. Ind.Code § 29–1–2–1.

7. As noted at the outset, it is unfortunate that the parties did not seek out the necessary professional advice and services in this instance. It is our hope that this family might ultimately settle this matter so as to alleviate additional litigation expenses.