# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**MATTHEW N. FECH**
Law Offices of Matthew N. Fech
Griffith, Indiana

ATTORNEY FOR APPELLEE:

**MICHAEL W. BOSCH**
Highland, Indiana

**FILED**

Dec 05 2013, 10:09 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KATHERINE RYAN, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No.  45A03-1304-DR-145 |
| | ) | |
| LARRY JANOVSKY, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Calvin D. Hawkins, Judge
Cause No. 45D02-9108-DR-805

**December 5, 2013**

**OPINION - FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issue

The marriage of Katherine Ryan and Larry Janovsky was dissolved in 1991 pursuant to a settlement agreement that included a provision dividing Janovsky's pension. Over twenty years later, Ryan presented a proposed Qualified Domestic Relations Order ("QDRO") for Janovsky's signature. Janovsky refused to sign, and Ryan filed a Verified Petition for Contempt and Rule to Show Cause, alleging Janovsky was in contempt of the parties' settlement agreement for failing to sign the QDRO. Ryan appeals the trial court's denial of her petition, raising one issue for our review: whether the trial court abused its discretion in finding her efforts to secure a QDRO were barred by the statute of limitations and the equitable doctrines of laches and waiver. Concluding the entry of a QDRO is not time-barred, we reverse and remand.

## Facts and Procedural History

Ryan and Janovsky were married in 1974 and divorced on December 9, 1991 pursuant to a decree of dissolution and agreed property settlement that provided, in relevant part:

> Wife shall receive a Qualified Domestic Relations Order for her share of Husband's pension which shall be computed as a sum equal to one-half (1/2) of his monthly benefit as of December 1, 1991. It is understood that Wife's benefits will be payable at such time as Husband receives his benefit.

Appendix of Appellant at 11.

In 2012, Ryan's attorney prepared a QDRO and forwarded it to Janovsky for his signature. Janovsky did not sign the document, and on October 30, 2012, Ryan filed a Petition for Contempt and Rule to Show Cause alleging Janovsky had willfully disregarded the trial court's December 9, 1991, order by failing to sign the QDRO. Janovsky responded

2

that there was no legal basis to require him to sign a QDRO more than twenty years after the dissolution decree was issued. The trial court held a hearing and thereafter issued the following order:

> 6. Former Wife, by counsel, argued to the Court that Janovsky, the Former Husband would not be prejudiced if presently ordered to execute at this time the Qualified Domestic Relations Order.
> 7. Counsel for Janovsky replied that while he would not be prejudiced, the Court should also consider the equitable defenses of laches and waiver and further submitted a Memorandum relying upon Needham v. Suess, 577 [N.E.2d] 965 ([Ind. Ct. App. 1991]). Further, counsel for Janovsky relied upon various statutes of limitations.
> IT IS THEREFORE ORDERED, ADJUDGED and DECREED that Katherine Ryan's Petition for Contempt and Rule to Show Cause is denied. She waited an inordinate amount of time to attempt to perfect her interest in Janovsky's pension. The Court finds Janovsky's Response and Memorandum is well taken and holds that Ryan is not entitled to any portion of Janovsky's pension.

Id. at 22-23. Ryan filed a motion to correct error, pointing out that no evidence had been presented that Janovsky is receiving his pension benefits yet and arguing that neither the equitable defenses of laches and waiver nor the statute of limitations are applicable. Ryan's motion to correct error was also denied, and Ryan now appeals.

Discussion and Decision

I. Standard of Review

Whether a person is in contempt of a court order is a matter left to the trial court's discretion, and we will reverse a trial court's decision only for an abuse of that discretion. Evans v. Evans, 766 N.E.2d 1240, 1243 (Ind. Ct. App. 2002). An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it or when the decision is contrary to law. In re Adoption of M.P.S., Jr., 963 N.E.2d

3

625, 629 (Ind. Ct. App. 2012).  Indiana Code section 31-15-7-10 provides that orders or awards contained in a dissolution of marriage decree may be enforced by contempt, among other remedies.

## II.  Timeliness of QDRO

To meet the legislative goal of regulating and protecting pension plan funds, the Employee Retirement Income Security Act of 1974 ("ERISA") provides that benefits may not be assigned or alienated.  29 U.S.C. § 1056(d); Hogle v. Hogle, 732 N.E.2d 1278, 1279 (Ind. Ct. App. 2000), trans. denied.  Because this caused problems in domestic relations settings where ERISA-governed pensions had to be divided, the Retirement Equity Act of 1984 amended ERISA to create an express statutory exception to the anti-alienation provision.  See Hogle, 732 N.E.2d at 1279.  State courts are now authorized in dissolution actions to order a pension plan administrator to distribute pension benefits to an alternate payee pursuant to a QDRO.  Pond v. Pond, 700 N.E.2d 1130, 1134 n.8 (Ind. 1998).  A QDRO has been characterized as any order made pursuant to a state domestic relations law which "creates or recognizes the existence of an alternative payee's right" to pension benefits. Hogle, 732 N.E.2d at 1280 n.3 (emphasis omitted) (quoting Ablamis v. Roper, 937 F.2d 1450, 1454 (9th Cir. 1991)).

The particular question of when a QDRO must be submitted is an issue of first impression in Indiana. The parties' dissolution decree provided for an equal division of Janovsky's monthly pension benefits calculated as of the date of the decree. However, because no QDRO securing Ryan's right to this portion of Janovsky's pension was prepared

4

and submitted for over twenty years, Janovsky argued, and the trial court agreed, that Ryan had forfeited her right. We agree with Janovsky and the trial court that the delay was "inordinate," App. of Appellant at 23, and we note that Ryan offered no explanation for the extremely lengthy delay in preparing the QDRO. Nonetheless, we cannot agree that the delay has caused the forfeiture of Ryan's right to a portion of Janovsky's pension benefits. Ryan's right to part of Janovsky's pension benefits arises from the settlement agreement; the QDRO only creates her right to be paid directly from the pension plan. And neither of these rights is yet enforceable because Janovsky's pension benefits are not yet payable to anyone. Allowing Janovsky to retain the entirety of his pension benefits because of the delayed preparation of a QDRO is supported by neither law nor equity: the statute of limitations and caselaw relied upon by Janovsky do not support his position, and the trial court's order leads to an inequitable result that cannot stand.

Janovsky cites to Indiana Code section 34-11-2-12 and to Needham v. Suess, 577 N.E.2d 965 (Ind. Ct. App. 1991), in support of his position. Section 34-11-2-12 provides that "[e]very judgment and decree of any court of record of the United States, of Indiana, or of any other state shall be considered satisfied after the expiration of twenty (20) years." In Needham, this court considered this statute, amongst others, in the context of a post-dissolution case. When Maxine Suess and Phillip Farber were divorced in 1977, Suess was granted a $50,000 judgment against Phillip that was to be paid in 121 monthly installments. The judgment was recorded and became a lien on Phillip's real property. Pursuant to statute,

5

judgment liens expire after ten years. <u>See</u> Ind. Code § 34-55-9-2.[1] In 1986, Phillip conveyed part of his property to the Needhams, and in 1989, another couple contracted to buy that property. When Suess learned of this pending sale, she protested the distribution of the sale proceeds and petitioned the dissolution court to renew her judgment because part of the judgment remained due. The dissolution court ordered the judgment be renewed for an additional ten years and the judgment be satisfied by the proceeds of the sale. We reversed, holding the judgment lien attached at the time it was recorded and expired ten years thereafter pursuant to the statute, at which time Suess could no longer seek to enforce the lien. <u>Needham</u>, 577 N.E.2d at 968. Further, because a judgment lien is a creature of statute, the trial court has no discretion to extend it. <u>Id.</u> We did note, however, that the expiration of the <u>judgment lien</u> did not prevent Suess from collecting the <u>judgment</u>, as a judgment itself may be enforced up to twenty years after its entry. <u>Id.</u>

Needham is inapposite to the case before us. The ex-wife in that case was granted a money judgment for a specific sum which she recorded, thereby procuring a judgment lien on her ex-husband's real property. Here, we are not presented with a question about the timeliness of enforcing a judgment lien against real property. The ten-year expiration of judgment liens imposed by Indiana Code section 34-55-9-2 is therefore not relevant to this case. We are also not presented with a money judgment for a sum certain payable immediately, and therefore Indiana Code section 34-11-2-12 also does not bar the entry of

---

[1] At the time <u>Needham</u> was decided, the ten-year expiration of judgment liens was found at Ind. Code § 34-1-45-2. The text of the statute then and now is substantively the same.

the QDRO. As our supreme court noted with respect to an order for periodic child support payments, such an order is not a final money judgment until an action is brought for a determination of the amount of unpaid and delinquent installments. Kuhn v. Kuhn, 273 Ind. 67, 70, 402 N.E.2d 989, 991 (1980). Similarly, the settlement agreement provides that Ryan will begin receiving her portion of the retirement benefits when Janovsky begins receiving his. Presumably, these benefits will be paid in monthly installments. When an obligation is payable in installments, the statute of limitations runs as to each installment as it becomes due. Id. at 71-72, 402 N.E.2d at 991. The applicable statute of limitations[2] would therefore not begin to run until the date of the first distribution from the pension plan, at the earliest. Although it may certainly be a good idea to have the paperwork in place well in advance, especially given the complexity of the statutes governing QDROs, there is no reason to require a QDRO to be entered prior to this date. Under Janovsky's theory, even if a QDRO had been entered immediately after the dissolution, Ryan would not be entitled to any benefits if Janovsky did not retire within twenty years of the dissolution because after twenty years, the "judgment" (Ryan's entitlement pursuant to the terms of the dissolution decree to a portion of Janovsky's pension benefits) would be deemed satisfied. If that were the case, Janovsky could retire twenty years and one day after the decree and frustrate the parties' agreement regarding the division of property.

Our decision that the statute of limitations does not bar the entry of a QDRO in this

---

[2] Because Janovsky has not yet begun receiving distributions from his pension plan, we need not decide what the applicable statute of limitations is.

7

case is supported by the reasoning of other courts which have considered this issue. In Jordan v. Jordan, 147 S.W.3d 255 (Tenn. Ct. App. 2004), the Tennessee appeals court considered whether a proposed QDRO filed more than ten years after a divorce was granted was barred by the statute of limitations.[3] The court explained the process of dividing a pension plan that falls within ERISA's provisions:

> [R]egardless of whether the parties agree to a division [of a pension plan] or the court has to decree one, an order must be entered memorializing the division. Even assuming the valid entry of an appropriate order, that order cannot be enforced in the absence of action by the plan administrator. While it is up to a court to decide how a pension plan is equitably divided in a divorce, it is clear, beyond any doubt, that, under ERISA, it is up to the plan administrator to determine whether the proposed QDRO complies with the terms of ERISA . . . . Once a plan administrator determines that a proposed QDRO meets the requirements of ERISA . . ., the division decreed by the court, as memorialized in the now-approved QDRO, can be enforced . . .; but, before the plan administrator finds and reports that the domestic relations order is qualified, the division decreed by the court cannot be enforced – regardless of what the court, the parties, or one of the parties, does or attempts to do . . . .

Id. at 262 (emphasis in original). The court also noted that under ERISA, there is no statute of limitations for the entry of a QDRO. Id. at 260. The court concluded that "[u]ntil the proposed QDRO is approved by the plan administrator and entered by the trial court, the act of the trial court in dividing the pension plan is not complete and hence not enforceable." Id. at 263. Accordingly, the wife's attempt to obtain approval of the proposed QDRO more than ten years after the divorce decree was not an action to enforce the divorce judgment and was not barred by the ten-year statute of limitations. Id.; see Ochoa v. Ochoa, 71 S.W.3d 593,

---

[3] The Tennessee statute of limitations in question provides, in relevant part: "The following actions shall be commenced within ten (10) years after the cause of action accrued: . . . (2) Actions on judgments and decrees of court of record of this or any other state or government . . . ." T.C.A. § 28-3-110.

8

596-97 (Mo. 2002) (explaining that statutory presumption that a judgment is satisfied after ten years does not prevent entry of a QDRO past the ten-year period); Bayen v. Bayen, 917 N.Y.S.2d 269, 270 (N.Y. App. Div. 2011) (noting that "a request to compel the equitable distribution of the agreed-upon percentage of the former husband's pension pursuant to an ERISA-compliant QDRO is not time-barred" although former wife would not be entitled to a present cash payment past the six-year statute of limitations); see also Duhamel v. Duhamel, 753 N.Y.S.2d 673, 674 (N.Y. Sup. Ct. 2002) (characterizing an action by one spouse to compel the entry of a QDRO as an action "to compel the other [spouse] to perform a mere ministerial task necessary to distribute funds previously allocated by the parties' own binding agreement" and is not subject to the limitations period on actions to enforce a judgment).

Janovsky also invoked the equitable doctrines of laches and waiver. Laches is an equitable defense that stops a person from asserting a claim she would otherwise be entitled to assert. Angel v. Powelson, 977 N.E.2d 434, 445 (Ind. Ct. App. 2012). The defendant raising such a defense must establish: "(1) inexcusable delay in asserting a known right; (2) an implied waiver arising from knowing acquiescence in existing conditions; and (3) a change in circumstances causing prejudice to the adverse party." Id. A mere lapse of time is insufficient to show laches; "it is also necessary to show an unreasonable delay that causes prejudice or injury." Id. Here, Janovsky has not yet retired and therefore he is not yet receiving his pension benefits. As the trial court stated in its order, Janovsky acknowledged that he would not be prejudiced by the late entry of the QDRO. The parties will be in the same position if a QDRO is entered tomorrow as they would have been if it had been entered

twenty years ago. Absent a showing a prejudice, laches cannot be established. Similarly, waiver is the "voluntary and intentional relinquishment of a known right." M.O. v. Indiana Dep't of Ins. Patient's Compensation Fund, 968 N.E.2d 254, 261 (Ind. Ct. App. 2012) (citation omitted), trans. denied. "[W]aiver is an affirmative act and mere silence, acquiescence or inactivity does not constitute waiver unless there was a duty to speak or act." Pohle v. Cheatham, 724 N.E.2d 655, 659 (Ind. Ct. App. 2000). As Ryan is not yet entitled to her share of the pension benefits, any duty she has to act to secure her right to receive them has not yet inured. There is no evidence that in the twenty-plus years since the divorce, Ryan has affirmatively volunteered to relinquish her right to receive in due time the agreed-upon portion of Janovsky's pension.

The result of the trial court's order – which not only denies the entry of the QDRO but affirmatively states that Ryan is no longer entitled to a portion of Janovsky's pension – is a windfall to Janovsky, who agreed as part of the dissolution of his marriage to Ryan to share a portion of his pension benefits when he began receiving them. And we note that even if the statute of limitations did bar the entry of a QDRO at this late date, all that would mean is that Ryan was not entitled to receive her share of the benefits directly from Janovsky's pension plan. She would still be entitled to payment of those amounts directly from Janovsky pursuant to the terms of the settlement agreement.

## Conclusion

Because Ryan's request for the entry of a QDRO securing her right to payment from Janovsky's pension plan is not time-barred by law or equity, the trial court abused its

discretion in denying Ryan's motion and ordering that she was not entitled to the previously-agreed portion of Janovsky's pension benefits. The trial court's order is therefore reversed and this cause is remanded to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

RILEY, J., and KIRSCH, J., concur.