NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

*In re the Matter of:*

TABATHA JACKSON, *Petitioner/Appellee*,

*v.*

MARK P. MATTHEWS, *Respondent/Appellant*.

No. 1 CA-CV 15-0096 FC
FILED 5-24-2016

Appeal from the Superior Court in Maricopa County
No. FC2003-090156
The Honorable Timothy J. Ryan, Judge

**AFFIRMED**

COUNSEL

The Harrian Law Firm, PLC, Glendale
By Daniel Seth Riley
*Counsel for Petitioner/Appellee*

Mark P. Matthews, Parker, CO
*Respondent/Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Kent E. Cattani delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Randall M. Howe joined.

---

**C A T T A N I**, Judge:

¶1　　　　Mark Matthews appeals from the superior court's entry of two qualified domestic relations orders ("QDROs").  For reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2　　　　Matthews and Tabatha Jackson entered into a property settlement agreement in connection with their divorce.  The agreement provided that QDROs would be issued granting Jackson 50% of Matthews's retirement and 401(k) benefits that had accrued during the marriage until January 14, 2003, when the dissolution petition was served.  The agreement stated that the QDROs would be "prepared by attorney Richard Underwood with the cost equally divided between the parties," and that "[b]oth parties agree to cooperate in the process of securing such benefits."

¶3　　　　Approximately nine years later, Jackson hired attorney Underwood to draft the QDROs.  Underwood began to do so, but withdrew a few weeks later after Matthews threatened to file a bar complaint against him for reasons not detailed in the record.  Jackson then hired attorney Robert Harrian, who drafted the two QDROs that were issued by the court.

¶4　　　　Matthews objected to the QDROs and asked the court to vacate their entry, arguing that (1) their issuance violated the requirement in the property settlement agreement specifying that attorney Underwood prepare them, (2) the court erred by not letting Matthews respond before issuing the QDROs, and (3) the QDRO for Matthews's retirement savings used a cutoff date beyond the term of the marriage.

¶5　　　　After a telephonic conference, in which Matthews and Harrian participated, the superior court ordered the parties to meet and confer to attempt to settle their dispute.  The parties did not meet, and instead filed several motions.  Matthews asserted that the QDROs were time barred and that Jackson's counsel committed procedural violations that had resulted in a denial of due process.  Jackson requested attorney's

fees and protective orders, and she sought to have Matthews be designated a vexatious litigant.

**¶6**          After considering the pending motions, the court reaffirmed its ruling on the QDROs, with each party to bear their own fees. Matthews appealed, and we have jurisdiction under A.R.S. § 12-2101.[1]

## DISCUSSION

**¶7**          Matthews argues that the court erred by: (1) ignoring an expired statute of limitations for entering the QDROs, (2) denying him due process, (3) allowing Jackson's attorney to prepare the QDROs, and (4) conveying his separate property.

## I.      Statute of Limitations.

**¶8**          Matthews argues that the issuance of the QDROs after such a long delay contravened the five-year statute of limitations for the enforcement of judgments. *See* A.R.S § 12-1551(B). Whether a statute of limitations applies, and when the cause of action accrues (where, as here, the relevant facts are undisputed) are questions of law that we review de novo. *See Cook v. Town of Pinetop-Lakeside*, 232 Ariz. 173, 175, ¶ 10 (App. 2013).

**¶9**          In *Johnson v. Johnson*, 195 Ariz. 389 (App. 1999), this court considered the applicability of A.R.S. § 12-1551(B) after an ex-wife waited more than 15 years to pursue her right to retirement benefits granted in a property settlement agreement. Under the agreement, the ex-wife was entitled to monthly installment payments of the ex-husband's retirement benefits, but the ex-wife did not sue to collect unpaid benefits until long after the retirement payments commenced. *Id.* at 390, ¶¶ 2, 5. Applying A.R.S. § 12-1551(B), this court held that the statute precluded recovery of any payments received by the ex-husband more than 5 years before wife filed her cause of action, but that she was not time barred from pursuing the more recent payments because the statute of limitations for each

---

[1]          Absent material revisions after the relevant date, we cite the current version of rules and statutes.

installment commenced when the installment became due and payable. *Id.* at 391–92, ¶ 11.[2]

**¶10**   Here, Matthews does not dispute that he had not begun to draw benefits as of the time Jackson pursued issuance of the QDROs. Because the benefits were not yet due and payable, under *Johnson*, the statute of limitations for pursing those benefits had not commenced and Jackson's cause of action was not time barred. *See id.*; *see also Groves v. Sorce*, 161 Ariz. 619, 621 (App. 1989) (noting that the statute of limitations for execution on judgments "does not mean that one must attempt to execute or sue on the judgment when one does not have a right to do so"). Accordingly, the QDROs were not barred by the statute of limitations.[3]

## II. Due Process.

**¶11**   Matthews contends that he was denied due process because he was not given adequate notice of the QDROs, that he did not have an opportunity to respond before the superior court signed the QDROs, and that the court did not conduct an evidentiary hearing. Due process requires notice and the right to be heard in a meaningful time and manner. *Huck v. Harambie*, 122 Ariz. 63, 65 (1979). The procedures required to ensure due process are not static, but rather depend on the demands of a particular situation. *See Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). We review de novo a claimed denial of due process, but even assuming a denial of due process, we will only reverse if the denial has prejudiced a party's interests. *See Jeff D. v. Dep't of Child Safety*, 2016 WL 1587533, at *2, ¶ 6 (Ariz. App. Apr. 15, 2016) (as amended); *County of La Paz v. Yakima Compost Co.*, 224 Ariz. 590, 598, ¶ 12 (App. 2010).

**¶12**   Matthews's due process claim fails because, before lodging the QDROs with the court, attorney Harrian contacted him to discuss them and verify values for the accounts as of the date of the settlement agreement. Matthews was thus aware that Harrian was drafting the

---

[2]  Other jurisdictions have similarly concluded that a cause of action in this context does not accrue until retirement benefits are due and payable. *See Ryan v. Janovsky*, 999 N.E.2d 895, 899–901 (Ind. Ct. App. 2013); *Jordan v. Jordan*, 147 S.W.3d 255, 261–62 (Tenn. Ct. App. 2004); *Johnson v. Johnson*, 330 P.3d 704, 710, ¶ 18 (Utah 2014).

[3]  Applying the same reasoning, we similarly reject Matthews's argument that the six-year statute of limitations for contract claims under A.R.S. § 12-548 bars the QDROs.

QDROs, even though he disputed Harrian's authority to do so. Moreover, Matthews has not shown prejudice because he chose not to submit his own proposed QDROs after being given an opportunity to do so. Accordingly, Matthews had a meaningful opportunity to be heard, and he has failed to establish prejudice from the issuance of the QDROs.

## III. Drafting Attorney.

**¶13** Matthews argues that the property settlement agreement contemplated that independent counsel (Underwood) would prepare the QDROs, and that having Jackson's own counsel prepare the QDROs improperly modified the agreement.

**¶14** When, as here, a settlement agreement does not merge with the divorce decree, it is an independent contract. *MacMillan v. Schwartz*, 226 Ariz. 584, 589, ¶ 15 (App. 2011). We review de novo the interpretation of such a contract. *See Jordan v. Burgbacher*, 180 Ariz. 221, 225 (App. 1994).

**¶15** The settlement agreement provided that "[t]he QDRO shall be prepared by attorney Richard Underwood with the cost equally divided between the parties," and that "[b]oth parties agree to cooperate in the process of securing such benefits." The agreement did not specify what would happen if Underwood was unable to prepare the QDROs, and although both parties were to share the cost of preparing the QDROs, nothing suggests that "independent" counsel was required.

**¶16** Matthews appears to be asserting that Jackson's attorney represented only Jackson's interests. But QDROs "convey only those rights to which the parties stipulated as a basis for the judgment" in the property settlement agreement. *See Ross v. Ross*, 791 N.Y.S.2d 187, 189 (N.Y. App. Div. 2005) (citation omitted). Thus, QDROs do not create new rights or otherwise alter the terms of the underlying agreement. Accordingly, the question of who should draft a QDRO is not independently relevant, and the only necessary inquiry is whether the QDRO accurately reflects the parties' agreement.

## IV. End Date for Calculation.

**¶17** Matthews further argues that the property settlement agreement apportioned retirement benefits from the beginning of the marriage until the petition was served on January 14, 2003, but the savings QDRO improperly used January 1, 2005 as the end date. He contends that the use of the 2005 date modified the property settlement agreement and awarded Jackson separate property to which she was not entitled.

¶18 Jackson does not dispute that the agreement contemplates using the 2003 value of the account at issue, but she notes that, in preparing the savings QDRO, attorney Harrian consulted with the plan administrator, who indicated that values were not available for any time periods prior to 2005, so Harrian used the 2005 value to approximate the 2003 value. Although an exact value would have been preferable, Matthews had an opportunity to provide information reflecting additional monies added to (or subtracted from) the savings account between 2003 and 2005, but did not do so. Accordingly, the superior court did not err by using the 2005 value as representative of the 2003 value.

¶19 Both parties have requested their fees on appeal. In an exercise of our discretion, we deny both requests. We grant Jackson's request for costs upon compliance with ARCAP 21.

## CONCLUSION

¶20 For the foregoing reasons, we affirm the superior court's decision.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama

6