

IN THE

# Court of Appeals of Indiana

Rebecca A. Elshoff,

*Appellant-Petitioner,*

v.

Donald D. Elshoff,

*Appellee-Respondent.*



FILED

May 20 2026, 9:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

May 20, 2026

Court of Appeals Case No.
25A-DR-1970

Appeal from the
Vanderburgh Superior Court

The Honorable
Leslie C. Shively, Judge

Trial Court Cause No.
82D04-0409-DR-962

**Robb, Senior Judge.**

## Statement of the Case

Rebecca Elshoff appeals the trial court's order denying her motion to reopen the cause of action dissolving her marriage to Donald Elshoff, arguing the trial court abused its discretion in doing so. Rebecca also asserts the trial judge demonstrated bias against her. Concluding that the trial court's comments did not prejudice Rebecca's case but that the court erred by denying the motion to reopen, we reverse and remand.

## Issues

Rebecca presents two issues, which we restate as:

> I. Whether the trial court erred by denying her motion to reopen the dissolution action; and

> II. Whether the trial court's remarks demonstrated bias that was harmful to her case.

## Facts and Procedural History

The parties' marriage was dissolved in November 2005. Their dissolution decree states, in relevant part:

> 1. Via Qualified Domestic Relations Orders, the Husband shall be the owner of 55% and the Wife the owner of 45% of all the Husband's following retirement accounts, but not necessarily limited to the following, but specifically excluding the Ascension Health Pension Plan which the Husband will retain all of those benefits, with each party to be the owner of all losses or gains thereon since the September 14, 2004 filing date until the accounts can be administratively processed:
>
> a.   Ascension Health (approximate balance $240,000)
>
> b.   TSA savings with Ascension Health (if not included in subparagraph a. above)
>
> c.   Anthem 401K (approximate balance $57,000)
>
> d.   AIG (approximate balance $87,000)
>
> e.   AIG (approximate balance $77,000)
>
> f.   IRA at ONB (approximate balance $6,500)

Appellant's App. Vol. 2, p. 11. The decree is silent as to which party was responsible for preparing the Qualified Domestic Relation Orders (QDROs).

[4]   Not until almost twenty years later when she was experiencing health problems and contemplating retirement, did Rebecca seek a copy of the decree and legal advice regarding its provisions. Rebecca then filed a motion in February 2025 entitled "Motion to Reopen Cause Due to Respondent's Failure to Comply with Mediation Agreement and Court Order." The primary issue was that QDROs had not been entered pursuant to paragraph 1 of the parties' decree, and therefore Rebecca had not received her portion of the funds from Donald's retirement accounts. Donald responded, claiming Rebecca is estopped from

asserting a claim to his retirement accounts based on the doctrines of laches and waiver. In June, the trial court held a hearing on Rebecca's motion, at which both parties testified. In addition, Exhibits 2 and 3 were admitted at the hearing and consisted of draft QDROs and a letter from Donald's counsel to Rebecca's counsel dated February 10, 2006, as well as follow-up letters from Donald's counsel to Rebecca's counsel on April 26, 2006, July 5, 2006, and May 16, 2007. The trial court subsequently denied Rebecca's motion. Rebecca now appeals.

## Discussion and Decision

### I. Motion to Reopen Dissolution Action

Rebecca contends the trial court erred by denying her motion to reopen the dissolution proceeding in order to enforce the property settlement agreement. We review a trial court's enforcement of a settlement agreement for an abuse of discretion. *Herber v. Bunting*, 194 N.E.3d 1142, 1145 (Ind. Ct. App. 2022). An abuse of discretion occurs if the court's decision is against the logic and effect of the facts and circumstances or if the court has misinterpreted the law. *Id.*

The QDROs agreed to by the parties in paragraph 1 of their decree of dissolution/property settlement agreement, *see supra*, were never executed or implemented. Consequently, Rebecca never received her 45% of Donald's retirement accounts as agreed to by the parties and ordered by the court. Rebecca now seeks to effectuate this property division by reopening the dissolution proceeding.

At the hearing, provisions of the parties' decree were discussed, including paragraph 5. Paragraph 5 concerns Donald's Ascension Health Pension Plan that is excluded from paragraph 1 and states that Rebecca shall remain designated to receive the survivor benefit of that account, which is payable *if she survives Donald*. *See* Appellant's App. Vol. 2, p. 12 (Mediated Agreed Final Decree of Dissolution of Marriage). On cross-examination, Rebecca testified that based on paragraph 5, she assumed that the QDRO funds referred to in paragraph 1 were likewise not available to her until Donald's death. Tr. Vol. 2, p. 24. Upon further questioning, Rebecca explained: "I was confused by the language with -- where it said that with the retirement funds, they would not be available to me until his demise; therefore, I assumed that was true of the other funds." *Id.* at 25.

For his part, Donald invokes the equitable defenses of laches and waiver and claims that Rebecca "is estopped from asserting her claim to a portion of his retirement accounts." Appellee's Br. p. 22. We pause here to clarify that Rebecca is not making a new claim to a portion of Donald's retirement accounts but rather attempting to enforce the court's judgment by obtaining the portion of his accounts that the court previously awarded to her. Citing this Court's decision of *Ryan v. Janovsky*, 999 N.E.2d 895, 898 (Ind. Ct. App. 2013), *trans. denied* in support of its proposition, the Superior Court of Pennsylvania noted:

> A party's request for entry of a proposed QDRO does not involve a distinct legal 'claim.' The right to seek a QDRO does not arise

from a wrong; instead, that right arises out of the divorce judgment itself. The procedural right to entry of the proposed QDRO is indisputably established by the judgment of divorce.

*Jago v. Jago*, 217 A.3d 289, 295 (Pa. Super. Ct. 2019) (cleaned up) (quoting *Dorko v. Dorko*, 934 N.W.2d 644, 648-49 (Mich. 2019)).

[9]　The doctrine of laches may be raised to prevent a person from asserting a claim that she would typically be entitled to assert. *Gabriel v. Gabriel*, 947 N.E.2d 1001, 1006-07 (Ind. Ct. App. 2011). Laches is an unreasonable delay in asserting a claim that causes prejudice to the party against whom the claim would be asserted, resulting in waiver of the claim. *Id.* at 1007. A party raising laches must establish: (1) an inexcusable delay in asserting a known right; (2) an implied waiver arising from a knowing acquiescence in existing conditions; and (3) a change in circumstances causing prejudice to the adverse party. *Id.*

[10]　Here, Donald alleges the twenty-year delay is inexcusable because the decree "is very clear" that Rebecca was awarded a percentage of his retirement funds to be transferred through QDROs and that she was aware of this provision. Appellee's Br. p. 23. On cross-examination, Donald's counsel established that Rebecca has two master's degrees, had previously gone through divorce proceedings, and was represented by counsel in this dissolution proceeding. Counsel pointed out that while paragraph 5 indicates the amount Rebecca would receive if she survives Donald, paragraph 1 does not contain such language and instead states, "until the accounts can be administratively

processed," which counsel asserts indicates "something that might happen fairly soon."[1] Appellant's App. Vol. 2, p. 11; Tr. Vol. 2, pp. 25-26.

[11] Yet, being an educated individual and knowing what the decree states does not necessarily equate to understanding the legal terminology and the procedure to bring about the stated result. Although Rebecca was represented by counsel and signed the mediated agreement, it is unclear what advice or counsel she received about the QDROs and the procedure for her to obtain her portion of Donald's retirement accounts. Rebecca unequivocally testified that she did not understand, was confused by the language, and assumed, based on paragraph 5 of the decree, that she would not receive any of Donald's retirement funds until he died. Operating under this incorrect assumption, she did not attempt to gain further information about the QDROs, inquire about the QDRO procedure, or pursue execution of the QDROs sooner.

[12] Moreover, Rebecca did not recall having any knowledge that Donald's attorney had sent drafts of QDROs and inquiries to her prior attorney. Rebecca's current counsel informed the court that she sought his advice in January 2025 as to the meaning of the provisions in the decree, and her motion to reopen was filed with the court the following month.

---

[1] In contrast, we note here for dissolution practitioners the clear wording contained in the QDRO provision of the Ryan/Janovsky property settlement: "It is understood that Wife's benefits will be payable at such time as Husband receives his benefit." *Ryan*, 999 N.E.2d at 897.

[13]    Donald has not sufficiently demonstrated that Rebecca knew of a legal right that she failed to exercise. The evidence shows that Rebecca's delay in pursuing the preparation and implementation of the QDROs was due to what she now realizes was a misconception and misapprehension of the terms of the parties' decree. It is certainly not a novel concept that ordinary parties struggle to understand legal terminology, legal theories, and court procedures. Rebecca knew of her eventual right to the funds, but she misapprehended that it was different timing than her survivor benefit in paragraph 5. And because Rebecca did not know that her belief or understanding was flawed—in other words, the gaps in her knowledge were unknown to her—she had no reason to seek legal advice. Thus, we cannot say that Rebecca delayed in asserting a *known* right such that the delay was inexcusable. *See Gabriel*, 947 N.E.2d at 1007 (finding no demonstration that wife knew of legal right that she failed to exercise even though she waited nearly ten years to petition to determine husband's heirs and assert claim to ownership of stock in business during which time locks to husband's business were changed).

[14]    Furthermore, Donald has not established that he was prejudiced by the delay. Donald is retired and receiving his retirement benefits. Without further explanation, he testified generally that the fact that the QDROs had not been put into place as set out in the parties' decree probably factored into his financial decisions over the years. Tr. Vol. 2, p. 50. More specifically, however, when asked if circumstances with his money or property had changed to his detriment, he responded, "No. I – I've been fortunate." *Id.* at 54.

"Absent a showing of prejudice, laches cannot be established." *Ryan*, 999 N.E.2d at 901.

[15] Donald also argues that Rebecca waived her right to receive the agreed-upon portion of his retirement accounts. Waiver is the voluntary and intentional relinquishment of a known right. *Rokita v. Tully*, 235 N.E.3d 189, 196 (Ind. Ct. App. 2024), *trans. denied*.

[16] As set out above, Rebecca knew of her right to a portion of Donald's retirement funds but mistakenly thought that right did not accrue until he died. Donald testified that Rebecca told him that "she wanted to stand on her own two feet" and that "she was not particularly interested in my retirement funds other than the [Ascension Health Pension Plan]." Tr. Vol. 2, p. 42. He stated that "it appeared" to him that she did not want the funds. *Id.* at 49. Rebecca did not recall stating this to Donald, and she confirmed that she did not in any way intend to convey to Donald that she did not want her portion of the funds as set out in paragraph 1 of their decree. *Id.* at 63-64. This evidence is insufficient to establish an intentional relinquishment by Rebecca of her right to the funds.

[17] For these reasons, the evidence does not support Donald's claim of laches or waiver. While factually distinguishable, this Court's rationale in *Ryan*, 999 N.E.2d 895 provides support for our decision here. In *Ryan*, the former wife requested entry of a QDRO twenty years after the divorce. Though inordinately delayed without explanation, the former wife's request was not barred by laches because there was no prejudice to the former husband as his

pension benefits were not yet payable. In addition, the former wife's claim was not waived because there was no evidence she had affirmatively volunteered to relinquish her portion of the pension funds.

[18] In reversing the trial court's denial of former wife's effort to secure a QDRO, we noted that former wife's portion of the pension benefits arose from the settlement agreement, not the QDRO; the QDRO merely effectuated former wife's right to be paid directly from the pension plan. *Id.* at 898. And allowing former husband to retain the entirety of his pension benefits, contrary to the parties' agreement, lead to an inequitable result that could not stand. *Id.* at 898-99.

[19] Similarly here, we conclude that the trial court erred by rejecting Rebecca's attempt to effectuate the property division as stated in the parties' decree. If we were to affirm the trial court's order denying Rebecca relief, the result would be a windfall to Donald who agreed and was ordered by the court in the parties' decree of dissolution to share a portion of his retirement accounts. While a delay of twenty years is inordinate, based on the evidence we cannot agree that the delay was inexcusable or that it has caused the forfeiture of Rebecca's right to such funds. Rebecca's right to those funds arises from the settlement agreement such that she is entitled to those funds whether by QDRO or by payments directly from Donald. *See, e.g.*, *id.* at 901 (stating that even if statute of limitation barred entry of QDRO such that former wife could not receive her share of benefits directly from former husband's pension plan, former wife would still be entitled to payment of those amounts directly from former

husband pursuant to terms of settlement agreement). Accordingly, we conclude the trial court abused its discretion when it denied Rebecca's motion to reopen the dissolution proceeding.

## II. Judicial Bias or Prejudice

[20] Rebecca next asserts that the cumulative effect of the judge's comments and questioning at the hearing on this matter demonstrated that he was biased against her and resulted in fundamental error.[2] Because Rebecca failed to object to the trial judge's remarks, she has waived the issue for our review. *See Husainy v. Granite Mgmt.*, LLC, 132 N.E.3d 486, 500 (Ind. Ct. App. 2019) (holding tenant waived for appellate review argument that trial judge was biased or prejudiced against him and should have disqualified himself where tenant raised argument for first time on appeal).

[21] Waiver notwithstanding, the law presumes that a judge will be unbiased regardless of the matter that comes before him. *Chappey v. Storey*, 204 N.E.3d 932, 939 (Ind. Ct. App. 2023), *trans. denied*. To rebut that presumption, the party asserting bias must establish that the judge has a personal prejudice for or against that party. *Id.* (quoting *Harris v. Lafayette LIHTC, LP*, 85 N.E.3d 871, 878 (Ind. Ct. App. 2017)). Stated another way, a party must show that the

---

[2] We apply the fundamental error doctrine in civil cases only in limited situations not present here, such as civil commitments or terminations of parental rights, where liberty interests or parental rights are at issue. *Johnson v. Wait*, 947 N.E.2d 951, 959 (Ind. Ct. App. 2011), *trans. denied*.

judge's action and demeanor crossed the barrier of impartiality and prejudiced the party's case. *Id.*

[22] Here, Rebecca claims the judge's objection to a question asked of her by her counsel on direct examination and question as to whether she was pursuing this claim to supplement her retirement compromised his duty to remain impartial and neutral. *See* Tr. Vol. 2, pp. 13, 33. "However, not all untoward remarks by a judge constitute reversible error[;]" rather, the critical question is whether the remarks harmed the complaining party. *A.N. v. K.G.*, 3 N.E.3d 989, 996 (Ind. Ct. App. 2014).

[23] Waiver notwithstanding, we are not persuaded that the judge's comments harmed Rebecca. The testimony the judge objected to was Rebecca's "belief" of what the parties' decree stated. However, this evidence was later admitted when, on cross-examination, Rebecca testified that she misunderstood the language of the decree and assumed that none of the funds were available to her until Donald's death. Tr. Vol. 2, pp. 24, 25. Likewise, the judge's comment concerning Rebecca supplementing her retirement was a summary of her prior testimony. She had testified she was unable to work as a nurse any longer due to health issues, which caused her to become concerned about retirement and her finances. *Id.* at 33. Thus, waiver aside, upon the record before us we cannot say the judge's remarks prejudiced Rebecca's case. *See Matheis v. McEvilly*, No. 24A-DR-2311, *6-7 (Ind. Ct. App. September 30, 2025) (mem.) (holding that mother waived issue and deprived trial court of opportunity to cure alleged bias by failing to object to court's prejudicial statement before

hearing all the evidence, statement criticizing way she conducted her case, and comments blaming her for father's bad behavior).

[24] We do, however, take this opportunity to remind the trial judge that he must at all times "'maintain an impartial manner and refrain from acting as an advocate for either party,'" *J.W. v. Ind. Dep't of Child Servs.*, 257 N.E.3d 1, 5 (Ind. Ct. App. 2025) (quoting *Chappey*, 204 N.E.3d at 939), and that he is obligated to be "patient, dignified, and courteous to litigants[.]" Ind. Code of Jud. Conduct, Rule 2.8(B).

## Conclusion

[25] Based on the foregoing, we conclude that Rebecca's request to obtain the previously agreed on portion of Donald's retirement accounts is not barred by laches or waiver, and therefore the trial court abused its discretion in denying her motion to reopen the dissolution proceeding. Further, Rebecca waived her claim of bias by failing to object to the judge's remarks. Thus, the trial court's order is therefore reversed, and this cause is remanded for further proceedings consistent with this opinion.

[26] Reversed and remanded.

Tavitas, C.J., and Foley, J., concur.

ATTORNEY FOR APPELLANT
Jessie D. Cobb-Dennard
The Northside Law Firm

Westfield, Indiana

ATTORNEY FOR APPELLEE

Laurie Baiden Bumb
Bumb Law Office, LLC
Evansville, Indiana